IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

TINT WORLD, LLC

      Plaintiff,

vs.                                      1:21-cv-00224-MV-LF

MIRROR IMAGE GLASS & AUTO DETAILING, LLC;
TINTING WORLDS & AUTO DETAILING, LLC; and
EDWARD ROMERO,

      Defendants.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION
## ON MOTION FOR DEFAULT JUDGMENT

THIS MATTER comes before the Court on plaintiff Tint World, LLC's ("Tint World")

Motion for Entry of Default Judgment, filed on July 15, 2021.  Doc. 10.  Pursuant to 28 U.S.C.

§§ 636(b)(1)(B), (b)(3) and Rule 72(b) of the Federal Rules of Civil Procedure, the Honorable

District Judge Martha Vázquez referred this matter to me for a recommended disposition.  Doc.

16.  Having reviewed the briefing and relevant case law, I find that Tint World's motion is well-

taken.  I recommend that the Court GRANT the motion and enter a default judgment in favor of

Tint World as outlined below.

### I.      Background

Tint World is a limited liability company organized under the laws of the State of Florida

with its principal place of business in the State of Florida.  Doc. 1 at 2.  Tint World offers  glass

replacement and protective coatings and a variety of related services for personal and

commercial automotive purposes.  *Id*. at 3.  During the course of its business, Tint World

developed innovative practices for the installation, coating, and protection of glass products, and

identified and marketed its products and services with its trademark TINT WORLD.  *Id*. at 3–4.

Its products and services became well known in the area of South Florida for quality and reliability.  *Id*. at 4.  In 2007, Tint World began to offer franchises to others to market and sell glass, window films, and glass protective coatings, and related products and services using its trademark TINT WORLD.  *Id*.  As a key component of the operation of its franchise business, Tint World sought to protect the TINT WORLD mark that identified its products and services. *Id*.  Accordingly, Tint World sought and obtained three registrations for its trademark (sometimes referred to as a "service mark") from the United States Patent and Trademark Office ("USPTO").  *Id*.; *see also id.* at 11–13.  By the end of 2019, Tint World operated 69 franchised locations in 23 states in the United States and four locations outside of the United States.  *Id*. at 5.

Defendant Mirror Image Glass & Auto Detailing, LLC ("MIG&AD") began conducting business in New Mexico sometime prior to 2020.  *Id.* at 6.  MIG&AD offered many of the same services as Tint World.  *Id*.  MIG&AD utilized the trademark TINT WORLD that belonged to plaintiff, or variations of that mark that are substantially the same as the TINT WORLD mark, without Tint World's knowledge or consent.  *Id*.  Sometime in 2020, Tint World's president and chief executive officer became aware that defendants MIG&AD and Edward Romero were using the TINT WORLD trademark in connection with their businesses.  *Id.*  In November of 2020, Tint World wrote to Mr. Romero demanding that his business cease using plaintiff's trademark in connection with the defendants' glass coating and related services.  *Id*.  Mr. Romero ignored the letter and continued to use Tint World's trademark in connection with his auto glass and detailing business.  *Id*.  Mr. Romero has continued to use Tint World's trademark and variations of the trademark that are identical or substantially similar to the TINT WORLD trademark.  *Id*. at 6–7.  In a conscious and willful effort to avoid the consequences of the continued infringing

2

activity, Mr. Romero formed another business entity, defendant Tinting Worlds & Auto Detailing, LLC ("TW&AD"), to continue the same business he conducted through MIG&AD but at a different location in Albuquerque, and he continued to use the TINT WORLD trademark without authorization. *Id*. at 7.

On March 12, 2021, Tint World filed its verified complaint for "trademark infringement and associated wrongs" against Defendants MIG&AD, TW&AD, and Mr. Romero (collectively "defendants"). Doc. 1. Tint World served all three defendants by hand-delivering the summons and complaint on April 5, 2021. Docs 4, 5, 6. Defendants' answers were due by April 26, 2021. FED. R. CIV. P. 12(a)(1)(A)(i) (answer due 21 days after being served with the summons and complaint). The time to plead or otherwise respond to the complaint has not been extended by agreement of the parties or by order of the Court. To date, all of the defendants have failed to appear, plead, or otherwise defend in this suit.

On May 26, 2021, Tint World filed a Request for Entry of Default. Doc. 8. On May 27, 2021, this Court entered a Clerk's Entry of Default as to all defendants. Doc. 9. On July 15, 2021, Tint World filed this Motion for Default Judgment. Doc. 10.

## II.   Discussion

### A.   Default Judgment

"When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." FED. R. CIV. P. 55(a). After the clerk has entered default, and a plaintiff applies to a court for default judgment, a district court may enter a default judgment. *See* FED. R. CIV. P. 55(b).

"[W]hen entry of a default judgment is sought against a party who has failed to plead or otherwise defend, the district court has an affirmative duty to look into its jurisdiction both over the subject matter and the parties." *Williams v. Life Sav. & Loan*, 802 F.2d 1200, 1203 (10th Cir. 1986). This allows the Court "to determine that it has the power to enter the default judgment." *Id.*; *see also Venable v. Haislip*, 721 F.2d 297, 300 (10th Cir. 1983) (holding that a default judgment is not appropriate if the court does not have jurisdiction over the subject matter and the defendant).

After determining it has jurisdiction over the subject matter and the defendant, a court must decide "whether the unchallenged facts create a legitimate basis for the entry of a judgment." *Greenwich Ins. Co. v. Daniel Law Firm*, No. 07-CV-02445-LTB-MJW, 2008 WL 793606, *1 (D. Colo. Mar. 22, 2008); *see also Bixler v. Foster*, 596 F.3d 751, 762 (10th Cir. 2010) ("Once default is entered, it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law.") (internal quotation marks and citation omitted). In deciding a motion for default judgment, a district court accepts as true all well-pled allegations in a complaint, except those related to proving damages. *See U.S. v. Craighead*, 176 F. App'x 922, 925 (10th Cir. 2006) (unpublished). The Court must determine whether the allegations contained in plaintiff's complaint are sufficient to state a claim for relief. To state a claim for relief, the complaint must contain sufficient factual matter, accepted as true, to show that the claim is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is facially plausible when the plaintiff pleads facts that allow the court to reasonably infer that the defendant is liable for the alleged conduct. *Id.* A pleading that offers mere legal conclusions, or a recitation of the elements of a cause of action, is insufficient. *Id.* A trial court is vested with broad discretion in deciding

whether to enter a default judgment.  *See Grandbouche v. Clancy*, 825 F.2d 1463, 1468 (10th Cir. 1987).

### B.  Jurisdiction

#### 1.  Subject Matter Jurisdiction

In count I of its complaint, Tint World alleges that defendants have engaged in trademark infringement, in violation of 15 U.S.C. § 1114.  Doc. 1 at 7–8.  In count II, Tint World alleges that defendants have falsely designated the origin of their products and services, in violation of 15 U.S.C. § 1125.  Doc. 1 at 8.  In count III, Tint World alleges that defendants have engaged in unfair or deceptive trade practices, in violation of New Mexico's Unfair Practices Act, 1978 N.M. STAT. ANN. § 57-12-1 *et seq*.  Doc. 1 at 8–9.  The Court has federal question subject matter jurisdiction over the first two counts under 28 U.S.C. § 1331.  The Court has supplemental jurisdiction over the state law claim under 28 U.S.C. § 1367.

#### 2.  Personal Jurisdiction

Before this Court can assert personal jurisdiction over defendants in a federal question case, the Court must determine (1) whether the applicable statute—the Lanham Act—potentially confers jurisdiction by authorizing service of process on the defendants and (2) whether the exercise of jurisdiction comports with due process.  *Peay v. BellSouth Medical Assistance Plan*, 205 F.3d 1206, 1209 (10th Cir. 2000).  Those questions are easily answered here.  The Lanham Act does not authorize nationwide service of process.  *Sunward Elecs., Inc. v. McDonald*, 362 F.3d 17, 22 (2d Cir. 2004).  Consequently, this Court may exercise jurisdiction over the defendants if authorized both by New Mexico law and by the United States Constitution.  *See*

FED. R. CIV. P. 4(k)(1)(A); *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008).

As an initial matter, to establish personal jurisdiction over a defendant, the plaintiff must properly serve the defendant. *See* FED. R. CIV. P. 4(k)(1)(A); *Venable*, 721 F.2d at 300. A plaintiff must serve a defendant within 90 days after the complaint is filed. *See* FED. R. CIV. P. 4(m). Tint World timely served all defendants. Tint World filed its complaint on March 12, 2021, and served defendants on April 5, 2021. Docs. 1, 4, 5, 6. In addition, Tint World properly served all defendants under the federal rules, which allow service on an individual by "delivering a copy of the summons and of the complaint to the individual personally," FED. R. CIV. P. 4(e)(2)(A), and which allow service on a corporation "by delivering a copy of the summons and of the complaint to any agent authorized by law to receive service of process," FED. R. CIV. P. 4(h)(1)(B). Tint World had a process server hand-deliver the summons and complaint to Edward Romero, individually and as the registered agent for MIG&AD and TW&AD, at 2522 Morningside Dr. NE, #A, in Albuquerque, New Mexico, 87110. Docs. 4, 5, 6; *see also* Doc. 10-3 at 3–8. Thus, Tint World properly served defendants under Rule 4.

Further, this court has personal jurisdiction over both MIG&AD and TW&AD because they are New Mexico businesses that transact business within the state. *See* N.M. STAT. ANN. § 38-1-16(A)(1). A court has personal jurisdiction over a company that is incorporated in and operates within the state where the court is located. *See Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945). Both MIG&AD and TW&AD are "Domestic Limited Liability Compan[ies]," incorporated in the State of New Mexico, with mailing addresses and principal places of business in Albuquerque, New Mexico. *See* Doc. 1 at

2; Doc. 10-3 at 3–8.  Consequently, the Court has personal jurisdiction over MIG&AD and

TW&AD.

The Court also has personal jurisdiction over Mr. Romero.  In its motion, Tint World

explains that following the clerk's entry of default, its attorney attempted to contact Mr. Romero.

Doc. 10 at 3–4.  In the course of their communications, Mr. Romero revealed that he no longer

lives in New Mexico and was residing in San Diego, California.  Doc. 10-2 at 2, 5–6.  "Federal

jurisdiction is determined based on the facts as they existed at the time the complaint was filed."

*Ravenswood Inv. Co., L.P. v. Avalon Corr. Services*, 651 F.3d 1219, 1223 (10th Cir. 2011).  In

this case, the complaint was filed on March 12, 2021.  Doc. 1.  Mr. Romero was served with the

summons and complaint in New Mexico by hand-delivery on April 5, 2021.  Doc. 4.  In a text to

Tint World's counsel on May 20, 2021, Mr. Romero claimed he "left 2 months ago to San Diego

California," and that he "no longer reside[s] in New Mexico."  Doc. 10-2 at 6.  It appears,

however, that at the time the complaint was filed, Mr. Romero was a resident of New Mexico,

and jurisdiction attached in March of 2021.  *See* Doc. 1 at 2–3.

Because Mr. Romero does not provide the specific date that he left New Mexico, he may

not have been a New Mexico resident when the complaint was filed.  The Court may only

exercise personal jurisdiction over a non-resident defendant "who is subject to the jurisdiction of

a court of general jurisdiction in the state where the district court is located," FED. R. CIV. P.

4(k)(1)(A), and if the exercise of personal jurisdiction comports with the due process clause of

the Fourteenth Amendment.  *United States v. Botefuhr*, 309 F.3d 1263, 1271 (10th Cir. 2002).

New Mexico's long-arm "statute extends the jurisdictional reach of New Mexico courts as far as

constitutionally permissible."  *Tercero v. Roman Catholic Diocese*, 2002-NMSC-018, ¶ 6, 132

N.M. 312, 316, 48 P.3d 50, 54 (2002).  Consequently, the Court "need not conduct a statutory

analysis apart from the due process analysis." *Marcus Food Co. v. DiPanfilo*, 671 F.3d 1159, 1166 (10th Cir. 2011) (internal citation and quotation omitted).

The Due Process Clause requires the Court to conduct a two-step analysis of personal jurisdiction.  First, the Court must examine whether the non-resident defendant has "minimum contacts" with the forum state.  *Int'l Shoe*, 326 U.S. at 316.  Second, if the defendant has sufficient contacts, the Court asks whether exercising personal jurisdiction over the defendant is consistent with "traditional notions of fair play and substantial justice."  *Id.*

The "minimum contacts" requirement of due process may be met by showing the existence of either general or specific jurisdiction.  *Trierweiler v. Croxton & Trench Holding Corp.*, 90 F.3d 1523, 1532 (10th Cir. 1996); *see also Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414 (1984).

> General jurisdiction is based on an out-of-state defendant's "continuous and systematic" contacts with the forum state, . . . and does not require that the claim be related to those contacts.  Specific jurisdiction, on the other hand, is premised on something of a *quid pro quo*:  in exchange for "benefitting" from some purposive conduct directed at the forum state, a party is deemed to consent to the exercise of jurisdiction for claims related to those contacts.

*Dudnikov*, 514 F.3d at 1078 (internal citations omitted).  Thus, "[s]uch contacts may give rise to personal jurisdiction over a non-resident defendant either generally, for any lawsuit, or specifically, solely for lawsuits arising out of particular forum-related activities."  *Shrader v. Biddinger*, 633 F.3d 1235, 1239 (10th Cir. 2011).  A court may assert specific jurisdiction "if the defendant has purposefully directed its activities at residents of the forum, and the litigation results from alleged injuries that arise out of or relate to those activities."  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (internal citations and quotations omitted).  The defendant must have purposely established minimum contacts with the forum state such that it "should reasonably anticipate being haled into court" there.  *Id.* at 474.

Even if Mr. Romero is not currently a New Mexico resident, he has purposefully directed his activities at residents of New Mexico, and the instant litigation results from alleged injuries that arise out of those activities.  Mr. Romero lived in New Mexico during the time he allegedly was using Tint World's trademarks to promote MIG&AD and TW&AD; he is currently listed as the registered agent of those New Mexico businesses, and he was served, individually and as the registered agent, in New Mexico.  Further, Mr. Romero is still listed as the registered agent of defendants MIG&AD and TW&AD, with addresses in Albuquerque, New Mexico.[1]  Mr. Romero is also listed as the manager, member, and organizer of MIG&AD and the organizer of TW&AD.  Doc. 10-3 at 3–7.  Mr. Romero "should reasonably anticipate being haled into court" in New Mexico.  *Burger King*, 471 U.S. at 474.  Thus, whether or not he was a resident when the complaint was filed, the Court has personal jurisdiction over Mr. Romero.

Because the Court has subject matter jurisdiction over the claims and personal jurisdiction over the parties, the Court has the power to enter a default judgment.  *Williams*, 802 F.2d at 1203.

### C.  Allegations in the Complaint

Having concluded that it has the power to enter a default judgment, the Court next must determine whether the well-pled allegations of the complaint, if true, state a claim for relief.  *See* 10A ALAN C. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE CIVIL, Rule

---

[1] The Court takes judicial notice of the corporation and business information listed with the New Mexico Secretary of State that identifies Edward Romero of 10331 Connemara Dr. SW, Albuquerque, NM 87121, as the registered agent for MIG&AD, and Edward Romero of 2522 Morningside Dr. NE, Suite A, Albuquerque, NM 87110 as the registered agent for TW&AD. *See* https://portal.sos.state.nm.us/BFS/online/corporationbusinesssearch/CorporationBusinessInformation (last visited Feb. 23, 2022).  The Court may take judicial notice of public documents filed with the secretary of state because they are a matter of public record and not subject to reasonable dispute. *JP Morgan Tr. Co. Nat. Ass'n v. Mid-Am. Pipeline Co.*, 413 F. Supp. 2d 1244, 1258 (D. Kan. 2006); FED. R. EVID. 201(b)(2).

55 § 2688.1 (4th ed. 2018); *Dallas Buyers Club, LLC v. Cordova*, 81 F. Supp. 3d 1025, 1032 (D.

Colo. 2015). The Court accepts as true all well-pled allegations in the complaint. *See*

*Craighead*, 176 F. App'x at 924 ("The defendant by his default, admits the plaintiff's well-

pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from

contesting on appeal the facts thus established.") (quoting *Nishimatsu Const. Co., Ltd. v.*

*Houston Nat. Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)).

Tint World alleges that defendants acting willfully and with knowledge of Tint World's

ownership and exclusive right to use or authorize others to use its federally-registered trademarks

and that defendants have infringed and are continuing to infringe Tint World's registered

trademarks, in violation of the Lanham Act, 15 U.S.C. § 1114 (commonly known as § 32 of the

Lanham Act) (Count I). Doc. 1 at 7–8. Tint World also alleges defendants had been and are

continuing to falsely indicate that their goods and services are associated with Tint World's

business, in violation of the Lanham Act, 15 U.S.C. § 1125(a) (commonly known as § 43 of the

Lanham Act) (Count II), and are acting in breach of the New Mexico Unfair Practices Act, N.M.

STAT. ANN. § 57-12-1 *et seq*. ("UPA") (Count III). *Id*. at 8–9.

### 1.   Trademark Infringement Violation of the Lanham Act (Counts I and II)

A trademark is defined by the Lanham Act as "any word, name, symbol, or device, or any

combination thereof" that is used "to identify and distinguish his or her goods, including a

unique product, from those manufactured or sold by others and to indicate the source of the

goods, even if that source is unknown." 15 U.S.C. § 1127. A service mark is similar, but it is

used "to identify and distinguish the services of one person, including a unique service, from the

services of others and to indicate the source of the services, even if that source is unknown." *Id*.

TINT WORLD, in its various forms, is such a mark. Doc. 1 at 11–13. The Lanham Act's

private causes of action for trademark infringement are available to the owners of service marks.

*1-800 Contacts, Inc. v. Lens.com, Inc.*, 722 F.3d 1229, 1238 (10th Cir. 2013) (internal citations omitted).[2]  Section 32 of the Lanham Act states:

> (1) Any person who shall, without the consent of the registrant—
>
>> (a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive; or
>>
>> (b) reproduce, counterfeit, copy, or colorably imitate a registered mark and apply such reproduction, counterfeit, copy, or colorable imitation to labels, signs, prints, packages, wrappers, receptacles or advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive,
>
> shall be liable in a civil action by the registrant for the remedies hereinafter provided.  Under subsection (b) hereof, the registrant shall not be entitled to recover profits or damages unless the acts have been committed with knowledge that such imitation is intended to be used to cause confusion, or to cause mistake, or to deceive.

15 U.S.C. § 1114.  Section 43(a) states:

> (a) Civil action
>
>> (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—
>>
>>> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

---

[2] Because of the similarity in the private actions allowed under the Lanham Act, the Court's references to "trademark" (referring to goods) include "service mark" (referring to services), even if not expressly stated.

>     (B) in commercial advertising or promotion, misrepresents the nature,
>         characteristics, qualities, or geographic origin of his or her or another
>         person's goods, services, or commercial activities,

shall be liable in a civil action by any person who believes that he or she is or is
likely to be damaged by such act.

15 U.S.C. § 1125(a).

To establish trademark infringement under § 43(a), the plaintiff must show that "(1) that
the plaintiff has a protectable interest in the mark; (2) that the defendant has used 'an identical or
similar mark' in commerce; and (3) that the defendant's use is likely to confuse consumers." *1-
800 Contacts, Inc*., 722 F.3d at 1238 (internal citation and quotation omitted).  An infringement
claim under § 32 has nearly identical elements, "except that the registration of a mark serves as
prima facie evidence of both the mark's validity and the registrant's exclusive right to use it in
commerce." *Id*. (citing 15 U.S.C. § 1115(a)).  The central question in an infringement action
under either § 32 or § 43(a) is "whether the defendant's use of the plaintiff's mark is likely to
cause consumer confusion." *Id*.

Tint World brings claims not only against MIG&AD and TW&AD—both LLCs—but
also against Mr. Romero individually.  This Court has not found any controlling Tenth Circuit
precedent as to whether a corporate officer may be personally liable for Lanham Act and
common law claims for trademark infringement and unfair competition.  *See Swig Holdings,
LLC, v. Sodalicious, Inc*., 2016 WL 2637823, at *2 (D. Utah May 6, 2016) (stating the same).
But as the court in *Swig* observed, there is ample authority from other circuits holding that an
officer or employee of a corporation is personally liable if he or she "actively and knowingly
caused the infringement." *Id*. (quoting *Chanel, Inc. v. Activewear of Florida, Inc.*, 931 F.2d
1472, 1477 (11th Cir. 1991)); *see also, e.g., Polo Fashions, Inc. v. Craftex, Inc.*, 816 F.2d 145,

149 (4th Cir. 1987) ("A corporate official may be held personally liable for tortious conduct committed by him, though committed primarily for the benefit of the corporation.  This is true in trademark infringement and unfair trade practices cases."); *Louis Vuitton Malletier S.A. v. Sunny Merchandise Corp.*, 97 F. Supp. 3d. 485, 501 (S.D.N.Y. 2015) ("A corporate officer is liable for trademark infringement if he directs, controls, ratifies . . . or is the moving force behind the infringing activity.").  Under New Mexico law, "[n]o member or manager of a limited liability company . . . shall be obligated personally for any debt, obligation or liability of the limited liability company solely by reason of being a member or manager of the limited liability company."  *In re Kalinowski*, 482 B.R. 334, 341 (B.A.P. 10th Cir. 2012).  But neither are such parties immunized "from liability for the consequences of [their] own acts or omissions for which [they] otherwise may be liable."  *Id.* (quoting N.M. STAT. ANN. § 53-19-13).  "A person may be liable for any act or omission performed in his capacity as a manager of a limited liability company if there is a basis for liability."  N.M. STAT. ANN. § 53-19-13.

In its complaint, Tint World alleges all three elements of a violation of trademark infringement.  First, Tint World alleges that it has a protectable interest in the TINT WORLD mark.  Tint World obtained registrations for its three marks from the USPTO.  Doc. 1 at 4, 11–13.  Second, Tint World alleges that MIG&AD and TW&AD have used "an identical or similar mark" in commerce.  Tint World alleges that "[i]n its business MIG&AD utilized the trademark TINT WORLD belonging to Plaintiff or variations of that mark that are substantially the same as TINT WORLD, without the knowledge or consent of Plaintiff."  *Id.* at 6.  "Defendants MIG&AD and Mr. Romero were using the trademark Tint World in connection with their business," and Mr. Romero used it "to promote the businesses operated in the names of his co-Defendant companies he owns and controls."  *Id.*  Additionally, Tint World alleges that "[i]n the

conduct of MIG&AD's business Mr. Romero personally directed and controlled the actions of that company." *Id*. Further, "Mr. Romero . . . continued to use Plaintiff's trademark in connection with his auto glass and detailed business" after Tint World wrote to him demanding that he and his businesses cease using Tint World's trademarks. *Id*. Finally, Tint World alleges that "Mr. Romero caused to be formed another business entity, Defendant TW&AD, to continue the conduct of the same kind of business he had conducted through MIG&AD, at a different location in Albuquerque, still using Plaintiff's trademark TINT WORLD without authorization." *Id*. at 7.

Third, Tint World alleges that the defendants' use of its mark is likely to confuse consumers. Tint World alleges that Mr. Romero continued to use its mark "to profit from the reputation and good will developed by Plaintiff in the conduct of business associated with its registered trademarks, with the intent to mislead prospective customers into believing the goods and services offered by Mr. Romero through his companies were associated with and sponsored or approved by Plaintiff." *Id*. Moreover, Tint World alleges that "[a]ll Defendants' actions described above were intended and likely to cause, and on information and belief have had the consequence of causing confusion among customers of glass and glass coating products, window films and services as to the source of origin of Defendants' products and services . . . ." *Id*. Because Tint World alleges that Mr. Romero personally participated in the trademark infringement in his capacity as a manager of MIG&AD and TW&AD, Mr. Romero is not shielded by the corporate structure, and Tint World states a claim against him individually. When taken as true, the allegations contained in Tint World's complaint are sufficient to establish all three elements of a claim for relief against all three defendants under both §§ 32 and 43 of the Lanham Act.

##### 2.   Violations of the New Mexico UPA

The UPA provides remedies for individuals damaged by "unfair, deceptive, or unconscionable trade practices."  *Quynh Truong v. Allstate Ins. Co.*, 2010-NMSC-009, ¶ 30, 147 N.M. 583, 591, 227 P.3d 73, 81.  To state a claim under the UPA for an unfair or deceptive trade practice, a complaint must allege:

> (1) the defendant made an oral or written statement, a visual description or a representation of any kind that was either false or misleading; (2) the false or misleading representation was knowingly made in connection with the sale, lease, rental, or loan of goods or services in the regular course of the defendant's business; and (3) the representation was of the type that may, tends to, or does deceive or mislead any person.

*Lohman v. Daimler-Chrysler Corp.*, 2007-NMCA-100, ¶ 5, 142 N.M. 437, 439, 166 P.3d 1091, 1093 (citing N.M. STAT. ANN. § 57-12-12(D)).  "The gravamen of an unfair trade practice is a misleading, false, or deceptive statement made knowingly in connection with the sale of goods or services."  *Diversey Corp. v. Chem-Source Corp.*, 1998-NMCA-112, ¶ 17, 125 N.M. 748, 754, 965 P.2d 332, 338.

A deceptive trade practice under the UPA includes both misrepresentations and material omissions.  *Salmeron v. Highlands Ford Sales, Inc.*, 271 F. Supp. 2d 1314, 1318 (D.N.M. 2003). The UPA provides a non-exhaustive list of unfair or deceptive trade practices, which includes:

> (1) representing goods or services as those of another when the goods or services are not the goods or services of another;
>
> (2) causing confusion or misunderstanding as to the source, sponsorship, approval or certification of goods or services;
>
> (3) causing confusion or misunderstanding as to affiliation, connection or association with or certification by another;
>
> (5) representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation or connection that the person does not have;

N.M. Stat. Ann. §§ 57-12-2(D)(1), (2), (3).

In its complaint, Tint World alleges that defendants are using its trademark in connection with their business to "promote the businesses" and to "profit from the reputation and good will developed by Plaintiff in the conduct of business associated with its registered trademarks, with the intent to mislead prospective customers into believing the goods and services offered by Mr. Romero through his companies were associated with and sponsored or approved by Plaintiff." Doc. 1 at 6, 7. Tint World further alleges that the defendants "falsely represented to the public that they were associated with and/or entitled to use [Tint World's] trademark in connection with their offer, sale and advertising of products and services identical with or substantially similar to the products and services offered by [Tint World] and its licensed franchisees with the use of Plaintiff's trademark." *Id*. at 9. The well-pled allegations in Tint World's complaint, if true, state a claim for relief by alleging a plausible deceptive trade practice under the UPA.

### D. Damages

In its complaint, Tint World asks that the Court to

1. Find that Tint World is the owner of all rights in the trademark TINT WORLD in connection with auto and commercial glass replacement and installation services and the sale of window films, glass protective coatings, and associated automobile cleaning and polishing services.

2. Order defendants be permanently enjoined from using Tint World's trademarks in connection with any business involving the sale or installation of glass and glass coating and coloring.

3. Order defendants to pay plaintiff compensatory damages for trademark infringement in an amount believed to be in excess of $350,000.

4. Order defendants to pay Tint World damages in an amount three times its actual damages in a total amount believed to be in excess of $1,050,000.

5. Order defendants to pay Tint World punitive damages for knowing, willful and malicious actions in violation of Tint World's rights.

6. Order defendants to pay Tint World interest on all compensatory damages owed to it as determined in this matter.

7. Order defendants to pay Tint World the attorney's fees they reasonable incurred in seeking the relief in their complaint.

8. Order such relief as the Court deems just and proper.

Doc. 1 at 9–10. In their motion, however, Tint World recognizes that a default judgment changes the landscape for the collection of monetary damages and, therefore, seeks only nominal damages under the Lanham act or statutory damages under the UPA. Doc. 10 at 5. Accordingly, I recommend that the Court grant Tint World's request for declaratory and injunctive relief and statutory damages under the UPA.

## 1. Declaratory and Injunctive relief

When entering a default judgment, the Court may conduct a hearing to obtain an accounting, determine the amount of damages, establish the truth of any allegation by evidence, or investigate any matter. FED. R. CIV. P. 55(b)(2). A hearing on the relief requested in Nos. 1 and 2 above is not necessary. Tint World's requested relief consists of declaratory and injunctive relief, and no further investigation is necessary. As discussed above, the allegations contained in Tint World's complaint show that it obtained trademarks for the TINT WORLD brand and that defendants are using those marks, or marks that are substantially similar, without permission. Because that use is confusing to consumers, defendants should be permanently enjoined from using those marks. Thus, no further investigation is necessary. *See Marcus Food Co.*, 671 F.3d at 1172 ("Rule 55 of the Federal Rules of Civil Procedure, which governs default judgments, does not require that the district court receive evidence on the claimed damages amount before entering a default judgment; rather, the Rule simply allows the district court to conduct a hearing

if it believes that additional investigation or evidence is necessary." (citing FED. R. CIV. P. 55(b)(2) and noting that the district court "may conduct hearings")).

To the extent Tint World is seeking injunctive relief pursuant to the UPA, I additionally recommend that the Court grant that relief.  Doc. 7 at 9; Doc. 1 ¶ 63.  Under the UPA, "[a] person likely to be damaged by an unfair or deceptive trade practice or by an unconscionable trade practice of another may be granted an injunction against it under the principles of equity and on terms that the court considers reasonable."  N.M. STAT. ANN. § 57-12-10(A).  A plaintiff seeking a permanent injunction must satisfy the following four-factor test:  (1) actual success on the merits; (2) irreparable harm unless the injunction is issued; (3) considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) the public interest would not be disserved by a permanent injunction.  *Prairie Band Potawatomi Nation v. Wagnon*, 476 F.3d 818, 822 (10th Cir. 2007).  First, for all of the reasons set forth above, Tint World has shown actual success on the merits.  Second, the Court agrees with Tint World that there is no adequate remedy at law for its injury, and it will be irreparably harmed if defendants are allowed to continue using the TINT WORLD trademarks.  Third, the balance of hardships favors granting the injunction.  Fourth, the Court can discern no public interest that would be harmed by granting the requested injunctive relief.  I therefore recommend that the Court grant injunctive relief barring defendants from continuing to use the TINT WORLD trademarks, or marks that are substantially similar.

### 2.  Monetary Damages

In its motion, Tint World explains

> Normally a party seeking a damage award pursuant to the entry of a default judgment would be required to have alleged quantifiable damages for a court to fix damages by entry of a default judgment, without holding a damage hearing.  *See, e.g.*, *[Martinez v. CitiMortgage, Inc.*, 347 F. Supp. 3d 677, 689

(D.N.M. 2018)].  Here by their refusal to participate in this proceeding Defendants have effectively prevented Tint World from obtaining facts to enable it to provide a calculation of damages—whether consisting of profits they earned by virtue of their infringing acts or damages Tint World can establish to its business attributable to their infringement recoverable under the Lanham Act (15 U.S.C. §1117(a)); or damages that can be trebled under the UPA when the unfair practice is determined to be willful (1978 NMSA §57-12-10(B)).  Under these circumstances, given that Defendant's willfulness in commission of their wrongful acts has been alleged and liability determined by their default, the Court should award nominal damages (under the Lanham Act) or statutory damages (under the UPA) to Tint World, based on the submissions presented.  This Court has previously noted cases in which nominal damage awards were made without holding a damage hearing, under comparable circumstances, and it has further entered default judgment in the amount of $300.00 in statutory damages for willful violation of the UPA, without a hearing.[3]  *See Two Old Hippies, LLC v. Catch The Bus, LLC*, 277 F.R.D. 448, 464 (D.N.M. 2011).

Doc. 10 at 5.

When entering a default judgment, the Court may conduct a hearing to obtain an accounting, determine the amount of damages, establish the truth of any allegation by evidence, or investigate any matter.  FED. R. CIV. P. 55(b)(2).  The Court may enter a default judgment without a hearing if "the amount claimed is a liquidated sum or one capable of mathematical calculation."  *Venable*, 721 F.2d at 300.  The Court concludes that a hearing is not necessary to enter default judgment because plaintiff's preferred relief consists of statutory damages, along with declaratory and injunctive relief.  These damages are capable of mathematical computation,

---

[3] The UPA states:

Any person who suffers any loss of money or property, real or personal, as a result of any employment by another person of a method, act or practice declared unlawful by the Unfair Practices Act may bring an action to recover actual damages or the sum of one hundred dollars ($100), whichever is greater.  Where the trier of fact finds that the party charged with an unfair or deceptive trade practice or an unconscionable trade practice has willfully engaged in the trade practice, the court may award up to three times actual damages or three hundred dollars ($300), whichever is greater, to the party complaining of the practice.

N.M. STAT. ANN 1978 § 57-12-10(B).

19

and a hearing is not necessary.  *See Marcus Food Co. v. DiPanfilo,* 671 F.3d 1159, 1172 (10th Cir. 2011) ("Rule 55 of the Federal Rules of Civil Procedure, which governs default judgments, does not require that the district court receive evidence on the claimed damages amount before entering a default judgment; rather, the Rule simply allows the district court to conduct a hearing if it believes that additional investigation or evidence is necessary.  FED. R. CIV. P. 55(b)(2) (noting that the district court "may conduct hearings")).  Tint World is entitled to statutory damages under the UPA in the amount of $300.

### 3.   Attorney's Fees and Costs

I further find that Tint World is entitled to an award of attorney's fees and costs under the Lanham Act and the UPA.  The Lanham Act's general damages provision provides in pertinent part:

> When a violation of any right of the registrant of a mark registered in the Patent and Trademark Office, a violation under section 1125(a) or (d) of this title, or a willful violation under section 1125(c) of this title, shall have been established in any civil action arising under this chapter, the plaintiff shall be entitled, subject to the provisions of sections 1111 and 1114 of this title, and subject to the principles of equity, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action.

15 U.S.C. § 1117(a).  "The Lanham Act allows for a prevailing party to recover attorney's fees 'in exceptional cases.'"  *Derma Pen, LLC v. 4EverYoung Ltd.*, 999 F.3d 1240, 1244 (10th Cir. 2021) (quoting  15 U.S.C. § 1117(a)).  There is no dispute that Tint World is the prevailing party in this case.  Defendants have failed to answer and appear to defend any of their alleged actions in the complaint.  The Lanham Act does not define what is an "exceptional" case, but the Tenth Circuit has determined that an exceptional case occurs when a trademark infringement is malicious, fraudulent, deliberate, or willful.  *United Phosphorus, Ltd. v. Midland Fumigant, Inc.*, 205 F.3d 1219, 1232 (10th Cir.2000).

The well-pleaded allegations in the complaint support a finding that defendants acted deliberately and willfully by using Tint World's trademarks in an effort to confuse consumers for their own economic gain.  For example, Tint World alleges that Mr. Romero personally directed MIG&AD to use marks "he knows to be identical with or substantially the same as Plaintiff's TINT WORLD mark."  Doc. 1 at 6.  Tint World further alleges that Mr. Romero knowingly ignored Tint World's letter to cease using its trademarks to promote his business.  *Id*.  "Mr. Romero stated that he and his businesses were under no obligation to cease using  [Tint World's] trademark, and has since continued to use that trademark and variations of the trademark that are essentially identical with or substantially the same as Plaintiff's TINT WORLD trademark."  *Id*. at 6–7.  Tint World further alleges that

> in a conscious and willful effort to avoid the consequences of the continued infringing activity . . ., Mr. Romero caused to be formed another business entity, Defendant TW&AD, to continue the conduct of the same kind of business he had conducted through MIG&AD, at a different location in Albuquerque, still using Plaintiff's trademark TINT WORLD without authorization.

*Id*. at 7.

These allegations establish that the trademark infringement in this case is deliberate and willful, and that this is an exceptional case in which attorney's fees are warranted.  Defendants' failure to appear in this action further demonstrates the exceptional nature of this case and the propriety of awarding attorney's fees to Tint World.  *See CrossFit, Inc. v. Jenkins*, 69 F. Supp. 3d 1088, 1103–04 (D. Colo. 2014) (collecting cases).  Tint World is entitled to an award of attorney's fees and costs pursuant to the Lanham Act.

Similarly, the UPA's fee-shifting provision states that "[t]he court shall award attorney fees and costs to the party complaining of an unfair or deceptive trade practice or unconscionable trade practice if the party prevails."  N.M. STAT. ANN. § 57-12-10(C).

A prevailing party is defined as "the party who wins the lawsuit—that is, a plaintiff who recovers a judgment or a defendant who avoids an adverse judgment." *Dunleavy v. Miller*, 116 N.M. 353, 360, 862 P.2d 1212, 1219 (1993). We have also defined the prevailing party as "[t]he party to a suit who successfully prosecutes the action or successfully defends against it, prevailing on the main issue, even though not necessarily to the extent of his original contention." *Hedicke v. Gunville*, 2003–NMCA–032, ¶ 26, 133 N.M. 335, 62 P.3d 1217 (internal quotation marks and citation omitted). Finally, we have reiterated that the prevailing party is the party that wins on the "main issue of the case." *Id.*

*Mayeux v. Winder*, 2006-NMCA-028, ¶ 41, 139 N.M. 235, 246, 131 P.3d 85, 96. In other words, under the UPA, attorney's fees are available to the prevailing party without regard to willfulness. There is no dispute that Tint World is the prevailing party in this case; it therefore is entitled to an award of attorney's fees pursuant to the UPA.

Tint World's counsel submitted a declaration in support of its application for an award of attorney's fees. Doc. 10-1. A court, however, may not award attorney's fees without holding a hearing to determine the amount. *Venable*, 721 F.2d at 300.

## III. Conclusion

For the reasons stated, I recommend that the Court grant Tint World's Motion for Default Judgment (Doc. 10) and

1. Award declaratory relief that Tint World is the owner of all rights in the trademark TINT WORLD in connection with auto and commercial glass replacement and installation services and the sale of window films, glass protective coatings, and associated automobile cleaning and polishing services;

2. Award injunctive relief that defendants be permanently enjoined from using Tint World's trademarks in connection with any business involving the sale or installation of glass and glass coating and coloring;

3. Award $300 in statutory damages under the UPA to Tint World; and

4. Hold a hearing to determine the amount of attorney's fees Tint World is entitled to as a result of prosecuting its complaint.

> **THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).  Written objections must be both timely and specific.  *United States v. One Parcel of Real Prop., With Buildings, Appurtenances, Improvements, & Contents, Known as: 2121 E. 30th St., Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996).  A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition.  Failure to file timely and specific objections will result in waiver of *de novo* review by a district or appellate court.  *Id*.  In other words, if no objections are filed, no appellate review will be allowed.

_____
Laura Fashing
United States Magistrate Judge